# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| GEORGE W. MARTIN AND ) <br> CATHERINE W. MARTIN, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> HIGHLAND INDUSTRIES, INC.; BGF ) <br> INDUSTRIES, INC.; AND ) <br> BURLINGTON INDUSTRIES, INC. ) <br> ) <br> Defendants. ) <br> _____ ) <br> ) | Case No.: 4:18-cv-03143-DCC <br><br> **AMENDED COMPLAINT** <br> (Negligence and Recklessness, Nuisance and Trespass; also Injunctive Relief) <br> (DAMAGES) <br> Jury Trial Demanded |

## PARTIES, JURISDICTION AND VENUE

The Plaintiffs allege the following:

1. That Plaintiffs are citizens and residents of the County of Chesterfield, State of South Carolina.

2. That Plaintiffs are the owners of a parcel of real estate upon which their residence is located, at 323 Sliding Hill Rd., Cheraw, South Carolina. Said tract also borders a stream which flows from Defendants' property.

3. Upon information and belief:

    (a) Defendant Highland Industries, Inc. (hereinafter "Highland") is a Delaware Corporation with its principal place of business and corporate headquarters in Kernersville, North Carolina;

    (b) Highland owns and operates an industrial plant at 650 Chesterfield Hwy., Cheraw, South Carolina, upstream from Plaintiffs' property;

1

(c) Highland acquired said industrial plant and real estate at Cheraw, South Carolina in 1988 from Burlington Industries, Inc., which filed for Bankruptcy protection in 2001;

(d) Highland's current website states that "Highland began in 1988 as it took on the equipment and expertise of Burlington Industrial Fabrics Company (BIFCO)";

(e) Since 1988 Highland has continued to operate said industrial plant at Cheraw, South Carolina.

4. Upon information and belief:

(a) Defendant BGF Industries, Inc. (hereinafter "BGF") is a Delaware corporation with its principal place of business in Danville, Virginia.

(b) Defendant BGF currently owns and operates an industrial facility in Chesterfield County, S.C., and is doing business in said County and State.

(c) Defendant BGF (also known as "BGF Glass Fabrics, Inc." for a brief period of time), by and through its parent corporation Porcher Textile, a French company, purchased the Glass Fabrics Manufacturing ("GFM") division of Burlington Industries, Inc. in 1988, which was known as the Burlington Glass Fabrics Company and/or as the Burlington Glass Fabrics Division.

(d) From approximately 1961 to approximately 1982, the Glass Fabrics Manufacturing (GFM) Company/division of Burlington Industries, Inc. operated and/or participated substantially in the operation of the plant in question at 650 Chesterfield Highway., Cheraw, South Carolina, in the production and manufacturing of glass fabrics. Burlington Industries, Inc. operated its GFM division as "Burlington Glass Fabrics Company" and/or as "Burlington Glass Fabrics Division."

(e) During the time period that the Burlington Glass Fabrics Company a/k/a Burlington Glass Fabrics Division operated and/or participated substantially in the operation of the plant in question at 650 Chesterfield Highway, fiberglass pigments, dyes and fixing agents used to process fiberglass contained polychlorinated biphenyls ("PCB's"), were used at the plant; further, that such PCB's were released and/or discharged by said division into soils, into the western ditch/drainage ditch, into a retention pond, into "drying ponds," into storm water drainage areas, inside the plant buildings and outside the plant buildings, and ultimately into surface waters.

(f) That Defendant BGF, in its purchase and acquisition of Burlington Glass Fabrics Company, a/k/a Burlington Glass Fabrics Division, assumed various liabilities of Burlington Glass Fabrics Company, a/k/a Burlington Glass Fabrics Division, which included liability for environmental contamination at the plant site in question at 650 Chesterfield Highway, Cheraw, S.C.

(g) Defendant BGF has successor liability for the acts and delicts of Burlington Glass Fabrics Company, a/k/a Burlington Glass Fabrics Division, of Burlington Industries Inc., in that:

    a. Defendant BGF expressly or impliedly agreed to assume the liabilities of the predecessor;

    b. The purchase of Burlington Glass Fabrics Company, a/k/a Burlington Glass Fabrics Division, by Defendant BGF was a de facto merger;

    c. Defendant BGF is a mere continuation of the predecessor;

    d. This is a continuity of enterprise between the predecessor and successor;

    e. Defendant BGF retained many of Burlington's employees, supervisory personnel, and production facilities at various former Burlington production sites;

    f. Defendant BGF purchased and assumed many patents, licenses and contracts of Burlington;

    g. Defendant BGF continued to manufacture same or similar fiberglass products as Burlington's GFM Division/Company, with virtually the same assets, equipment and general business operations; and

    h. Defendant BGF holds itself out as a continuation of Burlington Glass Fabrics.

5. Upon information and belief:

  (a) Defendant Burlington Industries, Inc. (hereinafter "Burlington"), operated the plant site at 650 Chesterfield Highway, Cheraw, S.C., from 1961 to 1988, and leased the premises from another property owner initially, but acquired legal ownership of the plant site in approximately 1982, ultimately selling and transferring the plant site to Defendant Highland in 1988;

  (b) Defendant Burlington was a Delaware corporation, with its principal place of business in Greensboro, North Carolina, and doing business in the State of South Carolina, Chesterfield County, from 1961 to 1988, and at various times thereafter;

  (c) Defendant Burlington, in its operation of the plant site in question, handled compounds and substances containing PCB's, and during the time of its operation of the plant site in question, released and discharged PCB's into the soils, the western ditch/drainage ditch, the retention pond, the drying beds, storm water drainage areas, at places inside and outside the buildings, and into the surface waters at the plant site; and

4

    (d) At the time of the sale of the plant site in question by Defendant Burlington to Defendant Highland in 1988, the plant site was seriously contaminated with PCB's.

6. That this action involves contamination of Plaintiffs' property, and the operation of Defendants' industrial plant, both located in Chesterfield County, South Carolina.

7. That this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Sec. 1332 because diversity of citizenship exists between the parties, and the amount in controversy exceeds $75,000.00.

8. That this Court has jurisdiction over the parties because the acts of Defendants referenced herein, and the affected real property of Plaintiffs, are in Chesterfield County, South Carolina.

## Substantive Allegations

9. That at the time of Defendant Highland's purchase of said industrial plant site in 1988 from Burlington Industries, Inc., said plant site was seriously contaminated with high concentrations of Polychlorinated Biphenyls (PCB's).

10. That Defendant Highland, when it purchased the plant site at 650 Chesterfield Highway in 1988:

    (a) Assumed various liabilities of Burlington Industries, Inc. related to the business, assets and property of Burlington Industries, Inc., which included liability for environmental conditions and environmental contamination at the site in question, including the liability which is the subject of this litigation; and

    (b) Purchased, acquired ownership of, took possession of, and acquired responsibility for, the PCB's, the PCB contamination, the PCB-contaminated soils, and PCB-contaminated surface waters, at the plant site.

11. That PCB's are classified as "hazardous substances," and are determined to be a "toxic pollutant," a "hazardous air pollutant," and a "toxic chemical," and have been determined to be carcinogenic.

12. That Defendant Highland, when it acquired said industrial plant site, knew or should have known that the property it was acquiring was seriously contaminated with PCB's.

13. That at the time that Defendant Highland acquired the aforesaid industrial plant site in 1988, and at the time hat Defendant BGF acquired the Burlington Glass Fabrics Company/Division, there existed readily available information regarding the likely contamination of the property, including but not limited to:

    (a) Knowledge of Burlington's operations and activities, including its use of pigment dyes, delusterants, latex finishes, acrylic finishes and components of fiberglass fabrics;

    (b) Open and obvious existence of sludge drying beds on the Burlington property, which were unlined;

    (c) Public records of the South Carolina Department of Health and Environmental Control (DHEC) which included a construction permit for "a chemical pre-treatment system having recycling capabilities comprising units for neutralization, chemical precipitation, dissolved air flotation, and sludge handling;"

    (d) Public records of DHEC which included a letter dated March 12, 1970, from the Pee Dee District Sanitation Director to the South Carolina Board of Health Pollution Control Authority Executive Director, stated that "several complaints have been received by the Chesterfield County Health Department concerning the discharge of a waste product into an open ditch [by the Burlington Industries facility]"; Further, the

Sanitation Director had confirmed by direct observation that "the plant is indeed discharging a green fluid…into an open ditch at the rear of a housing development;"

(e) Public records of the Pee Dee District Sanitation Director and the Chesterfield County Health Department, regarding the above information;

(f) Available information that PCB – containing compounds were used as fabric coatings for heat and/or flame resistance as well as in synthetic resins, rubber, adhesives, de-dusting agents, and in latex and acrylic finishes along with pigment dyes and de-lusterants to fiberglass fabrics, all of which was in accord with the obvious operations of Burlington Industries;

(g) Open and obvious prior dumping of hazardous substances and hazardous wastes into the unlined sludge drying beds, and the open and obvious existence of solids remaining in the sludge drying beds at the time of Highland's acquisition of the property;

(h) Available records and documents of Burlington Industries, Inc.;

(i) Open and obvious condition of the Burlington property, including the sludge drying beds;

(j) Information readily available through a study of the Burlington plant site operations history, and through a study of soil and groundwater condition at the site;

(k) Information readily available through the exercise of reasonable due diligence by the Defendant.

14. That Defendants Highland and BGF knew, or in the exercise of reasonable due diligence should have known, that the property being acquired from Burlington was seriously contaminated.

15. That Defendants Highland and BGF knew or should have known that the contamination on the Burlington site would likely move from said site into the drainage ditch/creek, and into and onto the properties of Defendants' neighbors, including the property now owned by the Plaintiffs.

16. That Defendants Highland and BGF knew or should have known of Burlington's letter to DHEC in 1989, requesting permission to remove or cover the remaining solids in the drying beds, stating:

> In the early to mid-1970's, that plant was applying latex and acrylic finishes along with pigment dyes and delusterants to fiberglass fabrics and some of this material was falling out in the sewer lines causing blockage problems for the city. At their request, the plant installed a settling tank and the sludges from this tank were pumped into drying beds behind the plant.

17. That although Defendants knew or should have known of the contamination on the property in question, and knew or should have known of the likelihood of movement of the contaminants into the drainage ditch/creek and into and onto the properties of their neighbors, they failed to undertake any removal action of the contamination, and failed to take action to cease and/or limit the movement and discharge of such contaminants from the property into the drainage ditch/creek and onto and into the properties of its neighbors, until regulatory agencies began requiring such action in 2016 and thereafter.

18. That additionally, Defendant Highland for many years, until regulatory agencies became involved approximately in 2016, used and operated a storm water discharge pipe from its Northeast retention pond, further causing and allowing movement of the contaminants

8

from its site into the drainage ditch/creek and onto and into the properties of is neighbors, including the Plaintiffs.

19. That from the time of its acquisition of the site in question in 1988, and continuing over the ensuing twenty-eight (28) years to 2016 when regulatory agencies began requiring action, Defendant Highland allowed, and failed to take appropriate actions to prevent, the movement of the contaminants from its property into the drainage ditch/creek and onto and into the residential properties of its neighbors, including the Plaintiffs; further, this movement of contaminants continues to occur, now for more than thirty (30) years, from the Defendant's site to the residential properties of its neighbors, including the Plaintiffs.

20. That further, Defendant Highland was aware of the propensity for flooding in the area in question, and knew or should have known that heavy rains and/or storms could and would cause further movement of said contaminants from Defendant's site, to the properties of its neighbors, including the Plaintiff's, and even into the very residences of its neighbors, including the Plaintiffs, as occurred during a recent heavy storm.

21. That in December of 2016 and thereafter, Plaintiffs first learned that PCB's were found in soils of yards bordering the creek which flows from Defendant's plant site.

22. That in September of 2018, a serious storm caused further flooding, and further movement of the contaminants from Defendant's site, onto and into the properties of Defendant's neighbors.

23. That through neglect and failures of action, Defendants have released and discharged toxic and hazardous substances onto the property of Plaintiffs.

24. That the aforesaid releases and discharges by Defendants of toxic and hazardous substances have proximately resulted in the contamination and pollution of Plaintiffs' property.

25. That Defendants knew or should have known that said discharges and releases would likely migrate and contaminate Plaintiffs' property. In spite of such knowledge, Defendants caused, allowed, and failed to prevent contamination of Plaintiffs' neighborhood and property, and further failed to properly remove or remediate said contamination and pollution, thereby allowing it to continue to impact Plaintiffs' property. Further, Defendants continue to allow further migration of said contaminants and pollutants from the plant site to Plaintiffs' property.

26. That Defendants' actions and inactions regarding said discharges and releases are in reckless and/or willful disregard of Plaintiffs' rights and property.

27. As a proximate result of Defendants' acts and delicts, the Plaintiffs have suffered and will in the future suffer damage to the property, including financial loss, loss of value of the property, loss of the use and enjoyment of the property, and increased risk of exposure to hazardous and toxic substances, as well as a continued interference with use and enjoyment of their property. Also, Plaintiffs now have the risk of having to pay remediation costs in the future. Further, due to the Trespass and Nuisance as set forth herein, Plaintiffs have suffered and continue to suffer, due to loss of use and enjoyment of their property, annoyance, inconvenience, discomfort, loss of enjoyment of life, and interference with mental tranquility.

28. It is unlikely at this time that Plaintiffs' property contaminated by such substances can be fully returned to its pre-contamination conditions. Further, the migration of hazardous and toxic constituents from Defendants' site to Plaintiffs' property is continuing.

**AS A FIRST CAUSE OF ACTION – NEGLIGENCE AND RECKLESSNESS**
**ALL DEFENDANTS**

29. Plaintiffs reassert and reaffirm all allegations herein stated.

30. Defendants knew, or through the exercise of reasonable care, should have known that their failures to remediate, remove or prevent the migration of hazardous and toxic constituents on their property would cause releases and discharges of such substances onto the properties of their neighbors, including the Plaintiffs, thereby damaging them.

31. Defendants owed and continue to owe the Plaintiffs a duty of care. This duty includes a duty to not allow or cause contaminants to migrate from the plant site.

32. Defendants knew or should have known of the risks to person and property caused by such releases and discharges.

33. Defendants have a duty to comply with all federal, state and local laws.

34. Defendants knew or should have known that such substances are toxic and hazardous and would present a serious risk or injury to persons, property and the environment in the event of release or discharge. Despite this knowledge, Defendants' handling, releasing and discharging of hazardous substances was inadequate, improper and reckless.

35. Defendants knew or should have known that the discharges and releases of hazardous substances were migrating and continue to migrate onto Plaintiffs' property.

36. Defendants, by and through their agents and servants, were negligent, grossly negligent, reckless, careless, wanton, and willful, as follows:

    (a) In allowing the release and discharge of hazardous and toxic substances, contaminants and pollutants from the plant site into the environment and onto and into Plaintiffs' property;

    (b) In causing the release and discharge of hazardous and toxic substances, contaminants and pollutants into the environment;

11

(c) In failing to establish, implement, and maintain an appropriate procedure to prevent such hazardous and toxic substances to be released into the environment;

(d) In failing to design, construct, and maintain an appropriate system and/or method to prevent migration of such substances;

(e) In failing to timely inform state and federal authorities of the releases and discharges;

(f) In failing to timely warn persons such as the Plaintiffs of the hazardous and dangerous discharges and releases, and of the propensity of such to migrate and contaminate Plaintiffs' property;

(g) In failing to warn persons such as the Plaintiffs of the hazardous and dangerous nature of such substances;

(h) In failing to prevent further migration of such contaminants and pollutants onto Plaintiffs' property;

(i) In failing to timely remove and/or remediate such contamination, both on the plaint site and throughout the "impacted area";

(j) In continuing to allow the further migration of such contaminants and pollutants, thereby further impacting Plaintiffs' property;

(k) In violating the applicable federal and state laws regarding the release and discharge of hazardous substances, which constitutes negligence per se.

37. As a proximate result of Defendants' acts and delicts, Plaintiffs have been damaged as set forth hereinabove. Further, the migration of such toxic and hazardous substances onto Plaintiffs' property is continuing.

38. That the aforesaid acts and delicts of Defendants are in violation of the South Carolina Pollution Control Act, South Carolina Code §48-1-10, et. Seq., and constitute negligent <u>per se.</u>

39. That as a proximate result, Plaintiffs have been damaged as set forth hereinabove.

### AS A SECOND CAUSE OF ACTION – TRESPASS
### ALL DEFENDANTS

40. Plaintiffs reaffirm and reassert all allegations herein stated.

41. Defendants have caused and/or allowed the discharge and release, and have discharged and/or released, hazardous and toxic substances into the environment, which have entered and invaded the Plaintiffs' property.

42. The Plaintiffs at no time gave the Defendants permission or license to release and/or discharge such substances onto their property.

43. Defendants knew or should have known that their failures to prevent release of the hazardous and toxic substances, and the release and discharge of such substances, would likely damage the properties of their neighbors, including the Plaintiffs.

44. That Defendants have acted voluntarily in allowing and/or causing the releases and discharges of the hazardous and toxic substances from the site and into the environment.

45. That Defendants have committed multiple and continuing acts of Trespass onto and into the Plaintiffs' property, in that:

    (a) Plaintiffs have legal possession of their property;

    (b) Defendants committed voluntary entries of hazardous and toxic substances onto and into the property of Plaintiffs; and

    (c) The entries were without Plaintiffs' permission.

46. That a proximate result, Plaintiffs have been damaged as set forth hereinabove.

47. That Plaintiffs are entitled to actual and punitive damages as a result of Defendants' conduct.

### FOR A THIRD CAUSE OF ACTION – NUISANCE
### ALL DEFENDANTS

48. Plaintiffs reassert and reemphasize all allegations herein stated.

49. Defendants at all times relevant hereto, are or were engaged in a business that involves use and handling of hazardous and toxic substances, and the maintenance and operation of a plant site and property on which is contained serious contamination and hazardous and toxic substances.

50. Defendants released and discharged hazardous and toxic substances into the environment. These hazardous and toxic substances invaded the property of the Plaintiffs.

51. The Plaintiffs at no time gave Defendants permission or license to leak such substances onto Plaintiffs' property.

52. Defendants' release of hazardous substances onto the Plaintiffs' property has invaded and interfered with Plaintiffs' use and enjoyment of their property.

53. Molecules of dangerous chemicals escaped from the Defendants' plant site and invaded and remain in the soil and environment and will continue to be present into the future, and have interfered with the Plaintiffs' use and enjoyment of their property.

54. That Defendants' use and utilization of their property, including the discharge and release of hazardous and toxic constituents into the impacted area and onto Plaintiffs' property, is an improper and inappropriate use of Defendants' property.

55. Molecules of dangerous constituents present in the soil and environment that were released and discharged onto the Plaintiffs' property by Defendants created a private nuisance to

the Plaintiffs, and Defendants have not been granted license or permission by any state or federal governmental agency or the Plaintiffs to create such a nuisance.

56. As a further result of Defendants' releases and discharges into the soil and environment, Defendants have created a private nuisance, which proximately resulted in the damages to Plaintiffs as specified hereinabove.

57. That said nuisance is continuing in nature, and said migration and nuisance continue to impact Plaintiffs' property.

## AS A FOURTH CAUSE OF ACTION – INJUNCTIVE RELIEF
## DEFENDANT HIGHLAND

58. Plaintiffs reassert and reemphasize all allegations herein stated.

59. That upon completion of presentation of all evidence to the jury in this matter, Plaintiffs will ask this Court to issue an Injunction, Restraining Order, Writ of Mandamus, and/ or other appropriate Order, requiring certain acts and preventing certain acts, by Defendant Highland, as set forth herein.

60. That Plaintiffs are in need of, and entitled to, an Injunction, a Restraining Order, a Writ of Mandamus, and/or other appropriate Order of this Court:

   (a) Requiring Defendant Highland to immediately and completely, to the fullest extent possible, perform a remediation and removal of all contaminants from its plant site, the affected drainage ditch/creek, and from Plaintiffs' property;

   (b) Preventing Defendant from committing further and/or continuing discharges and/or releases of hazardous and toxic substances from its plant site;

   (c) In the event that Defendant claims to be unable or unwilling to comply with sub paragraphs (a) and (b) above, for an Order to terminate any further operations at Defendant's Cheraw plant site;

15

(d) For an Order to abate the Nuisance;

(e) For an Order requiring Defendant to indemnify and hold harmless the Plaintiffs for any and all liability asserted against them by any third parties in the future, including any and all state, federal and/or local regulatory agencies, in any manner related to the contamination of Plaintiffs' property; or in the alternative, for Judgment sufficient to reimburse Plaintiffs for any and all costs, expenses, time and resources used by Plaintiffs in the defense of such, and for all risks of such.

Wherefore, Plaintiffs pray:

A. For Judgment against Defendants, to include actual damages and punitive damages, in amounts to be determined by this Court;

B. For Injunctive Relief, to include an Injunction, a Restraining Order, a Writ of Mandamus, and/or other appropriate Orders, as set forth in Paragraph 60 hereinabove.

C. For the costs of this action.

D. For such other and further relief as this Court may deem just and proper.

Plaintiffs Demand Trial by Jury.

                    POLIAKOFF & ASSOCIATES, PA

                    *s/Gary W. Poliakoff*
                    Gary Poliakoff, Esq., S.C. Bar # 4488
                    atty@gpoliakoff.com
                    Ray Mullman, Esq., S.C. Bar# 8662
                    rmullmanjr@gmail.com
                    *Attorneys for Plaintiff*
                    215 Magnolia Street
                    Spartanburg, SC 29306
                    PO Box 1571
                    Spartanburg, SC 29304
                    (864) 582-5472
December 2, 2019              *Attorneys for the Plaintiff*